UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

CHAD C. HEMBY,                          )
                                         )
            Plaintiff,                    )
                                         )
      vs.                                 )   Case No. 4:15 CV1471 ACL
                                         )
NANCY A. BERRYHILL,[1]                    )
Acting Commissioner of Social Security,   )
                                         )
            Defendant.                    )

**MEMORANDUM AND ORDER**

Plaintiff Chad C. Hemby brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial

review of the Social Security Administration Commissioner's denial of his application for

Disability Insurance Benefits ("DIB") under Title II of the Social Security Act and Supplemental

Security Income ("SSI") under Title XVI of the Act.

An Administrative Law Judge ("ALJ") found that, despite Hemby's multiple severe

impairments, he was not disabled as he had the residual functional capacity ("RFC") to perform

jobs that exist in significant numbers in the national economy.

This matter is pending before the undersigned United States Magistrate Judge, with

consent of the parties, pursuant to 28 U.S.C. § 636(c).   A summary of the entire record is

presented in the parties' briefs and is repeated here only to the extent necessary.

For the reasons discussed below, the decision of the Commissioner will be affirmed.

---

[1]Nancy A. Berryhill is now the Acting Commissioner of Social Security.   Pursuant to Rule 25(d)
of the Federal Rules of Civil Procedure, Nancy A. Berryhill is substituted for Acting
Commissioner Carolyn W. Colvin as the defendant in this suit.

# I.  Procedural History

Hemby protectively filed his applications for DIB and SSI on June 14, 2012, and October 1, 2012, respectively.   (Tr. 278, 280.)   He alleged that he became disabled on December 15, 2011, due to depression, anxiety, lupus, back surgery in July 2012, and hip surgery in March 2012. (Tr. 278, 324.)   Hemby's claims were denied initially.   (Tr. 169-75.)   Following an administrative hearing, Hemby's claims were denied in a written opinion by an ALJ, dated April 14, 2014.   (Tr. 53-71.)   Hemby then filed a request for review of the ALJ's decision with the Appeals Council of the Social Security Administration (SSA), which was denied on August 20, 2015.   (Tr. 1-6.)   Thus, the decision of the ALJ stands as the final decision of the Commissioner. *See* 20 C.F.R. §§ 404.981, 416.1481.

In the instant action, Hemby first argues that the ALJ erred "in failing to properly evaluate the medical opinion evidence of treating orthopaedic surgeons Dr. Lange and Dr. Rogers in that the ALJ did not point to any conflicting medical opinion based on better information nor did the ALJ point to any specific inconsistency between the opinions of Dr. Lange and Dr. Rogers and the medical record and therefore the decision of the ALJ was not supported by substantial evidence on the whole record and must be reversed and benefits awarded to the Plaintiff."   (Doc. 17 at 16.) Hemby next contends that the ALJ erred in "finding that Plaintiff could, during the relevant period, perform the jobs of document preparer, dowel inspector, and patcher in that the vocational expert testimony as to the requirements of those jobs was inconsistent with the residual functional capacity as found by the ALJ and that therefore the decision of the ALJ to deny Plaintiff's claim for benefits was not supported by substantial evidence."   *Id.* at 21.

## II. The ALJ's Determination

The ALJ stated that Hemby meets the insured status requirements of the Social Security Act through December 31, 2017. (Tr. 58.) The ALJ found that Hemby had not engaged in substantial gainful activity since his alleged onset date of December 15, 2011. *Id.*

In addition, the ALJ concluded that Hemby had the following severe impairments: degenerative disc disease and depression. *Id.* The ALJ found that Hemby did not have an impairment or combination of impairments that meets or equals in severity the requirements of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. 59.)

As to Hemby's RFC, the ALJ stated:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift up to 10 pounds occasionally, stand and/or walk for approximately two hours per eight hour day, and sit for approximately six hours per eight hour day. The claimant is able to sit for two hours at a time, but will need to stand or walk for no more than five minutes before resuming a seated position with normal breaks. The claimant can never climb ladders, ropes or scaffolds; can never climb ramps or stairs; can never kneel, crouch, or crawl; can occasionally stoop and balance; and must avoid hazardous machinery which is defined as unshielded moving machinery and avoid exposure to unprotected heights. Finally, the claimant can have no interaction with the public, only occasional interaction with coworkers and supervisors, and interaction with supervisors should be limited to ensuring that the claimant is on task to complete tasks to industry standards.

(Tr. 61.)

The ALJ found that Hemby's allegations regarding his limitations were not entirely credible. (Tr. 62.) The ALJ indicated that she was assigning substantial weight to some of the opinions of treating surgeon David Lange, M.D., and was assigning little weight to other portions of Dr. Lange's opinion. (Tr. 66-67.) The ALJ accorded "little weight" to the opinion of treating

surgeon Williams Rodgers, M.D., because she found that it did not reflect Hemby's current level of functioning.  (Tr. 67.)

The ALJ further found that Hemby is unable to perform any past relevant work.  (Tr. 69.) The ALJ noted that a vocational expert testified that Hemby could perform jobs existing in significant numbers in the national economy, such as document preparer, dowel inspector, and patcher.  (Tr. 70.)   The ALJ therefore concluded that Hemby has not been under a disability, as defined in the Social Security Act, from December 15, 2011, through the date of the decision.  *Id.*

The ALJ's final decision reads as follows:

> Based on the application for a period of disability and disability insurance benefits protectively filed on June 14, 2012, the claimant is not disabled as defined in sections 216(i) and 223(d) of the Social Security Act.
>
> Based on the application for supplemental security income protectively filed on October 1, 2012, the claimant is not disabled under section 1614(a)(3)(A) of the Social Security Act.

(Tr. 71.)

## III.   Applicable Law

### III.A.  Standard of Review

The decision of the Commissioner must be affirmed if it is supported by substantial evidence on the record as a whole.   42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Estes v. Barnhart*, 275 F.3d 722, 724 (8th Cir. 2002).   Substantial evidence is less than a preponderance of the evidence, but enough that a reasonable person would find it adequate to support the conclusion.   *Johnson v. Apfel*, 240 F.3d 1145, 1147 (8th Cir. 2001).   This "substantial evidence test," however, is "more than a mere search of the record for evidence supporting the Commissioner's findings."   *Coleman v. Astrue*, 498 F.3d 767, 770 (8th Cir. 2007) (internal

quotation marks and citation omitted). "Substantial evidence on the record as a whole . . . requires a more scrutinizing analysis." *Id.* (internal quotation marks and citations omitted).

To determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole, the Court must review the entire administrative record and consider:

1. The credibility findings made by the ALJ.

2. The plaintiff's vocational factors.

3. The medical evidence from treating and consulting physicians.

4. The plaintiff's subjective complaints relating to exertional and non-exertional activities and impairments.

5. Any corroboration by third parties of the plaintiff's impairments.

6. The testimony of vocational experts when required which is based upon a proper hypothetical question which sets forth the claimant's impairment.

*Stewart v. Secretary of Health & Human Servs.,* 957 F.2d 581, 585-86 (8th Cir. 1992) (internal citations omitted). The Court must also consider any evidence which fairly detracts from the Commissioner's decision. *Coleman*, 498 F.3d at 770; *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). However, even though two inconsistent conclusions may be drawn from the evidence, the Commissioner's findings may still be supported by substantial evidence on the record as a whole. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001) (citing *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000)). "[I]f there is substantial evidence on the record as a whole, we must affirm the administrative decision, even if the record could also have supported an opposite decision." *Weikert v. Sullivan*, 977 F.2d 1249, 1252 (8th Cir. 1992) (internal quotation

marks and citation omitted).  *See also Jones ex rel. Morris v. Barnhart*, 315 F.3d 974, 977 (8th Cir. 2003).   A reviewing court should not disturb the ALJ's decision unless it falls outside the available "zone of choice" defined by the evidence of record.  *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011).

**III.B.   Determination of Disability**

A disability is defined as the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months.   42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 416.905.   A claimant has a disability when the claimant is "not only unable to do his previous work but cannot, considering his age, education and work experience engage in any other kind of substantial gainful work which exists … in significant numbers either in the region where such individual lives or in several regions of the country."   42 U.S.C. § 1382c(a)(3)(B).

To determine whether a claimant has a disability within the meaning of the Social Security Act, the Commissioner follows a five-step sequential evaluation process outlined in the regulations.   20 C.F.R. § 416.920; *see Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007).   First, the Commissioner will consider a claimant's work activity.   If the claimant is engaged in substantial gainful activity, then the claimant is not disabled.   20 C.F.R. § 416.920(a)(4)(i).

Second, if the claimant is not engaged in substantial gainful activity, the Commissioner looks to see "whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities."   *Dixon v. Barnhart*, 343 F.3d 602, 605 (8th Cir. 2003).   "An impairment is not severe if it amounts only to a slight abnormality that

would not significantly limit the claimant's physical or mental ability to do basic work activities." *Kirby*, 500 F.3d at 707; *see* 20 C.F.R. §§ 416.920(c), 416.921(a).

The ability to do basic work activities is defined as "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 416.921(b). These abilities and aptitudes include (1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) capacities for seeing, hearing, and speaking; (3) understanding, carrying out, and remembering simple instructions; (4) use of judgment; (5) responding appropriately to supervision, co-workers, and usual work situations; and (6) dealing with changes in a routine work setting. *Id*. § 416.921(b)(1)-(6); *see Bowen v. Yuckert*, 482 U.S. 137, 141, 107 S.Ct. 2287, 2291 (1987). "The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on her ability to work." *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (internal quotation marks omitted).

Third, if the claimant has a severe impairment, then the Commissioner will consider the medical severity of the impairment. If the impairment meets or equals one of the presumptively disabling impairments listed in the regulations, then the claimant is considered disabled, regardless of age, education, and work experience. 20 C.F.R. §§ 416.920(a)(4)(iii), 416.920(d); *see Kelley v. Callahan*, 133 F.3d 583, 588 (8th Cir. 1998).

Fourth, if the claimant's impairment is severe, but it does not meet or equal one of the presumptively disabling impairments, then the Commissioner will assess the claimant's RFC to determine the claimant's "ability to meet the physical, mental, sensory, and other requirements" of the claimant's past relevant work. 20 C.F.R. §§ 416.920(a)(4)(iv), 416.945(a)(4). "RFC is a medical question defined wholly in terms of the claimant's physical ability to perform exertional

tasks or, in other words, what the claimant can still do despite his or her physical or mental limitations." *Lewis v. Barnhart*, 353 F.3d 642, 646 (8th Cir. 2003) (internal quotation marks omitted); *see* 20 C.F.R. § 416.945(a)(1). The claimant is responsible for providing evidence the Commissioner will use to make a finding as to the claimant's RFC, but the Commissioner is responsible for developing the claimant's "complete medical history, including arranging for a consultative examination(s) if necessary, and making every reasonable effort to help [the claimant] get medical reports from [the claimant's] own medical sources." 20 C.F.R. § 416.945(a)(3). The Commissioner also will consider certain non-medical evidence and other evidence listed in the regulations. *See id.* If a claimant retains the RFC to perform past relevant work, then the claimant is not disabled. *Id.* § 416.920(a)(4)(iv).

Fifth, if the claimant's RFC as determined in Step Four will not allow the claimant to perform past relevant work, then the burden shifts to the Commissioner to prove that there is other work that the claimant can do, given the claimant's RFC as determined at Step Four, and his or her age, education, and work experience. *See Bladow v. Apfel*, 205 F.3d 356, 358-59 n.5 (8th Cir. 2000). The Commissioner must prove not only that the claimant's RFC will allow the claimant to make an adjustment to other work, but also that the other work exists in significant numbers in the national economy. *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); 20 C.F.R. § 416.920(a)(4)(v). If the claimant can make an adjustment to other work that exists in significant numbers in the national economy, then the Commissioner will find the claimant is not disabled. If the claimant cannot make an adjustment to other work, then the Commissioner will find that the claimant is disabled. 20 C.F.R. §416.920(a)(4)(v). At Step Five, even though the burden of production shifts to the Commissioner, the burden of persuasion to prove disability remains on the claimant. *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004).

The evaluation process for mental impairments is set forth in 20 C.F.R. §§ 404.1520a, 416.920a. The first step requires the Commissioner to "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment" in the case record to assist in the determination of whether a mental impairment exists. *See* 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). If it is determined that a mental impairment exists, the Commissioner must indicate whether medical findings "especially relevant to the ability to work are present or absent." 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The Commissioner must then rate the degree of functional loss resulting from the impairments in four areas deemed essential to work: activities of daily living, social functioning, concentration, and persistence or pace. *See* 20 C.F.R. §§ 404.1520a(b)(3), 416.920a(b)(3). Functional loss is rated on a scale that ranges from no limitation to a level of severity which is incompatible with the ability to perform work-related activities. *See id.* Next, the Commissioner must determine the severity of the impairment based on those ratings. *See* 20 C.F.R. §§ 404.1520a(c), 416.920a(c). If the impairment is severe, the Commissioner must determine if it meets or equals a listed mental disorder. *See* 20 C.F.R. §§ 404.1520a(c)(2), 416.920a(c)(2). This is completed by comparing the presence of medical findings and the rating of functional loss against the paragraph A and B criteria of the Listing of the appropriate mental disorders. *See id.* If there is a severe impairment, but the impairment does not meet or equal the listings, then the Commissioner must prepare an RFC assessment. *See* 20 C.F.R. §§ 404.1520a(c)(3), 416.920a(c)(3).

### IV. Discussion

Hemby first argues that the ALJ erred in evaluating the medical opinion evidence when determining his RFC. Hemby next argues that the ALJ erred in determining he could perform the jobs of document preparer, dowel inspector, and patcher.

Hemby has undergone four surgeries for hip and back impairments from his alleged onset date to the date of the administrative hearing. A summary of the procedures is provided below.

In October 2011, Hemby presented to Husam Nawas, M.D., at the St. Louis Orthopedic Institute, Inc., with complaints of right hip pain. (Tr. 466-68.) Dr. Nawas diagnosed Hemby with right hip capsule-labral tear, right hip piriformis syndrome,[2] and right hip abductor and core weakness. *Id.* On March 6, 2012, Hemby underwent hip arthroscopy performed by Dr. Nawas. (Tr. 478.) On July 3, 2012, Hemby reported no hip pain, and was instructed to follow-up only as needed. (Tr. 505-06.)

On February 28, 2012, Dr. Nawas noted that an MRI of Hemby's lumbosacral spine revealed evidence of right-sided lumbar radiculopathy with neuroforaminal narrowing. (Tr. 449.) Hemby saw Sandra Tate, M.D., at St. Louis Orthopedic Institute, Inc., on five occasions from March 5, 2012, through May 3, 2012, for treatment of low back and right buttock pain. (Tr. 451-52, 454-55, 456-57, 460-61, 462-63.) On May 3, 2012, Dr. Tate referred Hemby to Dr. David Lange for a surgical consultation. (Tr. 462-63.) On July 6, 2012, Dr. Lange performed a posterior lumbar interbody and posterolateral fusion at L4-L5 and posterolateral fusion at L5-S1, with placement of instrumentation at L4-5 and L5-S1. (Tr. 508-09.)

Hemby continued to complain of low back pain following surgery. (Tr. 585.) On November 27, 2012, Dr. Lange indicated that Hemby could either wait longer and use the bone growth stimulator, or acknowledge delayed healing and proceed with further surgery. (Tr. 587.) Hemby opted to schedule surgery. (Tr. 588.) On November 30, 2012, Hemby underwent a

---

[2]Piriformis syndrome starts with pain, tingling, or numbness in the buttocks. Pain can be severe and extend down the length of the sciatic nerve. The pain is due to the piriformis muscle compressing the sciatic nerve, such as while sitting on a car seat or running. The piriformis muscle is a flat, band-like muscle located in the buttocks near the top of the hip joint. *Piriformis Syndrome,* http://www.webmd.com/pain-management/guide/piriformis-syndrome (last visited February 16, 2017).

repair of the fusion, removal of loose S1 screws, and replacement of the instrumentation.   (Tr. 589-92.)

On June 4, 2013, Hemby reported that he was no better and that he wanted the hardware out.   (Tr. 597.)   Dr. Lange told Hemby there was nothing more he could do for him, and referred him to a new surgeon.   (Tr. 598, 635.)   Hemby saw William Blake Rodgers, M.D., on June 18, 2013.   (Tr. 635.)   Dr. Rodgers diagnosed Hemby with postlaminectomy syndrome, and acquired spondylolisthesis, and recommended anterior lumbar interbody fusion surgery.   (Tr. 636.) Hemby underwent surgery a final time on July 8, 2013.   (Tr. 632-34.)

### A.    Credibility Determination

The Court will first consider the ALJ's credibility determination, as the ALJ's evaluation of Hemby's credibility was essential to his RFC determination.   *See Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) ("[The plaintiff] fails to recognize that the ALJ's determination regarding her RFC was influenced by his determination that her allegations were not credible."); *Tellez v. Barnhart*, 403 F.3d 953, 957 (8th Cir. 2005) ("The ALJ must first evaluate the claimant's credibility before determining a claimant's RFC."); *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2002) (same).

In evaluating a claimant's credibility, the ALJ should consider the claimant's daily activities; the duration, frequency, and intensity of the symptoms; precipitating and aggravating factors; dosage, effectiveness, and side effects of medication; and functional restrictions.   *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).   The claimant's relevant work history and the absence of objective medical evidence to support the complaints may also be considered, and the ALJ may discount subjective complaints if there are inconsistencies in the record as a whole. *Choate v. Barnhart*, 457 F.3d 865, 871 (8th Cir. 2006) (citing *Wheeler v. Apfel*, 224 F.3d 891, 895

(8th Cir. 2000)). The ALJ must make express credibility determinations and set forth the inconsistencies which led to his or her conclusions. *Id.* (citing *Hall v. Chater*, 62 F.3d 220, 223 (8th Cir. 1995)). The Court will uphold an ALJ's credibility findings, so long as they are adequately explained and supported. *Ellis v. Barnhart*, 392 F.3d 988, 996 (8th Cir. 2005).

In this case, the ALJ found that Hemby's statements "concerning the intensity, persistence, and limiting effects of these symptoms [were] not entirely credible." (Tr. 62.) An ALJ may view "[a]cts which are inconsistent with a claimant's assertion of disability" to "reflect negatively upon that claimant's credibility." *Chaney v. Colvin*, 812 F.3d 672, 677 (8th Cir. 2016) (quoting *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001)).

In assessing his credibility, the ALJ found that Hemby's daily activities were not consistent with his allegations that he has been unable to work due to disabling back pain. (Tr. 65.) At the administrative hearing, Hemby testified that he can lift up to twenty-five pounds, sit for thirty to forty-five minutes before he has to get up and move around, load the dishwasher, wash and dry clothes, sweep, cook, take out the trash, take care of his two small children, take his children to the city park weekly, dress and bathe without difficulty, bathe his children, drive daily, shop for groceries for up to an hour at a time, and has hunted a few times since his surgery. (Tr. 65, 85, 102-05, 110, 112-15.) In addition, the ALJ noted that the medical record documents reports of frequent walking and operating a riding lawn mower during the relevant period, including a September 2013 report of "doing his two mile walks in the mornings." (Tr. 65, 663, 621, 638, 642.) Hemby's ability to perform these significant tasks undermined his claims as to the severity of his back pain. *See Guilliams v. Barnhart*, 393 F.3d 798, 802 (8th Cir. 2005) (significant daily activities may be inconsistent with claims of disabling pain).

The ALJ next discussed Hemby's medications. She noted that Hemby testified that his psychotropic medications helped him, and that he experienced no side effects from any of his medications. (Tr. 65, 66, 99.) The ALJ properly considered the effectiveness and lack of side effects of Hemby's medications. *See Polaski*, 739 F.2d at 1322.

The ALJ also noted that Hemby did not fully comply with his treating doctor's advice regarding smoking cessation and bone stimulator use. (Tr. 66.) In Dr. Lange's November 2012 notes from Hemby's second surgery, he stated that Hemby was "told on multiple occasions, it is necessary for him to stop all nicotine exposure. Although, the patient on multiple occasions had suggested that was the case, his family suggest, he continues to smoke." (Tr. 589-90.) On December 11, 2012, Dr. Lange stated that a printout from the bone growth stimulator company revealed Hemby "was not utilizing his device as religiously as he had stated." (Tr. 593.) The ALJ properly considered these instances of noncompliance and found that they detracted from Hemby's credibility. *See Guilliams*, 393 F.3d at 802 ("A failure to follow a recommended course of treatment also weighs against a claimant's credibility"); 20 C.F.R. §§ 404.1530, 416.930 (unjustified failure to follow prescribed treatment is grounds for denying disability).

The ALJ also noted that Hemby reported in his function report that he required a cane for ambulation, but there is no evidence that a cane was prescribed or used. (Tr. 64, 350.) The ALJ found that this inconsistency detracted from the credibility of Hemby's subjective complaints.

The ALJ performed a proper credibility analysis and found that Hemby's complaints of disabling pain were not entirely credible.

**B.     Medical Opinion Evidence[3]**

In determining Hemby's RFC, the ALJ next discussed the medical opinion evidence.   The

opinion evidence in the record is summarized below.

On August 28, 2012, Dr. Lange stated that Hemby was "overdoing it with very long

walks."   (Tr. 537.)   He advised Hemby to cut his walking into several shorter walks during the

day as opposed to a long, fatiguing one.   *Id.*

On November 14, 2012, state agency physician Kevin Threlkeld, M.D., completed a

Physical Residual Functional Capacity Assessment.   (Tr. 147-48.)   Dr. Threlkeld expressed the

opinion that Hemby could occasionally lift and carry ten pounds, and frequently lift or carry less

than ten pounds; stand or walk for a total of two hours; sit for a total of six hours in an eight-hour

workday; push or pull an unlimited amount; can never climb ladders, ropes, or scaffolds; and can

occasionally climb ramps or stairs, balance, stoop, crouch, crawl.   *Id.*

On January 10, 2013, Dr. Lange completed a Medical Source Statement, in which he

expressed the opinion that Hemby could frequently lift ten pounds, and occasionally lift five

pounds; stand or walk for a total of three hours; sit for a total of three hours; push or pull no more

than twenty pounds; occasionally balance, kneel, or crouch; and could never climb, stoop, or bend.

(Tr. 567-68.)   In support of these opinions, Dr. Lange noted "spinal fusion-not healed as yet."

(Tr. 569.)   Dr. Lange further indicated that rest would be helpful to Hemby, and that it was

necessary for him to assume a reclining position for up to thirty minutes one to three times a day,

assume a supine position for up to thirty minutes one to three times a day, and prop up his legs to a

height of two to three feet one to three times a day while sitting.   (Tr. 569.)

---

[3]Hemby only challenges the ALJ's findings regarding his physical impairments.   As such, the
ALJ will not discuss the medical evidence regarding his mental impairments.

Hemby presented to Dr. Lange for follow-up on January 21, 2013, at which time Dr. Lange stated that Hemby "remains disabled form a work point of view." (Tr. 595.)

Dr. Rodgers completed a Medical Source Statement-Physical on September 18, 2013, in which he expressed the opinion that Hemby could frequently lift five pounds, and occasionally lift ten pounds; needs to rest frequently when standing or walking, and cannot stand, sit, or walk for prolonged periods as it increases pain; can sit a total of one hour; is limited in his ability to push or pull; can never bend; and can occasionally climb, balance, stoop, kneel, crouch, or bend. (Tr. 625-26.) Dr. Rodgers found that rest would be helpful to Hemby, and that it was necessary for him to assume a reclining position for up to thirty minutes one to three times a day, assume a supine position for up to thirty minutes one to three times a day, and prop up his legs to a height of two to three feet one to three times a day while sitting. (Tr. 627.)

"It is the ALJ's function to resolve conflicts among the various treating and examining physicians." *Tindell v. Barnhart,* 444 F.3d 1002, 1005 (8th Cir. 2006) (quoting *Vandenboom v. Barnhart,* 421 F.3d 745, 749–50 (8th Cir. 2005) (internal marks omitted)). The opinion of a treating physician will be given "controlling weight" only if it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." *Prosch v. Apfel,* 201 F.3d 1010, 1012–13 (8th Cir. 2000). The record, though, should be "evaluated as a whole." *Id.* at 1013 (quoting *Bentley v. Shalala,* 52 F.3d 784, 785–86 (8th Cir. 1997)). The ALJ is not required to rely on one doctor's opinion entirely or choose between the opinions. *Martise v. Astrue,* 641 F.3d 909, 927 (8th Cir. 2011). Additionally, when a physician's records provide no elaboration and are "conclusory checkbox" forms, the opinion can be of little evidentiary value. *See Anderson v. Astrue,* 696 F.3d 790, 794 (8th Cir. 2012). Regardless of the decision the ALJ must still provide "good reasons" for the

weight assigned the treating physician's opinion.   20 C.F.R § 404.1527(d)(2).

The ALJ must weigh each opinion by considering the following factors: the examining and treatment relationship between the claimant and the medical source, the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, whether the physician provides support for his findings, whether other evidence in the record is consistent with the physician's findings, and the physician's area of specialty.   20 C.F.R. §§ 404.1527(c)(1)-(5), 416 .927(c)(1)-(5).

The ALJ first discussed Dr. Lange's opinions.   The ALJ indicated that she was assigning "little weight" to Dr. Lange's January 2013 statement that Hemby remained "disabled from a work point of view."   (Tr. 66, 595.)   The ALJ explained that the issue of disability is reserved to the Commissioner, and Dr. Lange's statement was not supported by the record.   (Tr. 66.)   She stated that the "objective evidence and the claimant's reports regarding his daily activities contradict a finding that the claimant cannot perform primarily seated work activity with limited lifting requirements as outlined in the above residual functional capacity assessment."   *Id.*

The ALJ stated that she was giving "substantial weight" to Dr. Lange's statement that Hemby should cut his walking into several shorter walks per day as opposed to long fatiguing ones.   (Tr. 66, 537.)   She stated that the evidence supports that Hemby has difficulty with prolonged standing and walking due to his back pain and leg numbness and this is reasonable in light of his history of multiple surgeries and the objective findings of tenderness and some decreased range of spinal motion.   (Tr. 67.)

The ALJ stated as follows with regard to Dr. Lange's Medical Source Statement findings:

As for Dr. Lange's opinion that the claimant can lift 10 pounds occasionally, and five pounds frequently; can never push or pull more than 20 pounds; can never climb; and can only occasionally balance, kneel, and crouch, the undersigned has given these statement[s] considerable weight here.   Again this is consistent with the evidence including the claimant's treatment history and objective findings. However, the undersigned gives little weight to Dr. Lange's statements that the claimant can never stoop, or bend and that he would need to recline, lie supine and elevate his legs during the day.   This portion of the opinion is contradicted by persuasive evidence, including the claimant's testimony regarding his daily activities, the minimal objective findings including negative straight leg raise testing and normal gait on exam.

(Tr. 67.)

Hemby argues that the ALJ erred in discrediting portions of Dr. Lange's opinion, and in inserting her own medical opinion.

The undersigned finds that the ALJ provided good reasons for crediting portions of Dr. Lange's opinion while discrediting other portions of the opinion.   The ALJ found that Dr. Lange's opinions regarding Hemby's inability to stoop or bend, and need to elevate his legs, recline, or lie in a supine position were inconsistent with Hemby's reported activities.   As previously discussed, Hemby was able to load the dishwasher, wash and dry clothes, sweep, take his family to the park, take out the trash, dress and bathe, clean the house, take care of his small children, bathe his children, drive, shop in stores for up to an hour at a time, hunt, operate a riding tractor, and walk two miles daily.

An ALJ can give less weight to a medical opinion when it is inconsistent with the evidence in the record.   *See Travis v. Astrue,* 477 F.3d 1037, 1041 (8th Cir. 2007).   The inconsistencies between Hemby's reported activities and Dr. Lange's opinion was a sufficient basis for discrediting some of Dr. Lange's findings.   *See Toland v. Colvin*, 761 F.3d 931, 936 (8th Cir. 2014) (stating "if a doctor evaluates a patient as having more physical limitations than the patient actually exhibits in her daily living, an ALJ need not ignore the inconsistence") (citations omitted).

The ALJ also noted that minimal objective findings were noted on examination, including negative straight leg raise testing and normal gait. (Tr. 67, 460, 462, 537, 594, 595, 596.) On December 10, 2012, just ten days after his second back surgery, Hemby reported that he felt better than he did before the surgery. (Tr. 594.) Upon examination, Hemby had a normal gait. (Tr. 594.) On January 21, 2013, eleven days after Dr. Lange authored his opinion, Dr. Lange indicated that "on exam everything looks fine." (Tr. 595.) In March 2013, Hemby reported that he felt "great" on some days, and on other days, he experienced low back pain. (Tr. 596.) Upon examination, Hemby was "cheerful," got up and down and ambulated normally, and had no limp on the side of his labral repair. (Tr. 596.) In addition, the state agency physician, Dr. Threlkeld, reviewed the medical evidence of record and found that the examinations were "unremarkable." (Tr. 148.) The ALJ's finding that the medical evidence documented minimal objective findings is supported by the record. Thus, the ALJ provided sufficient reasons for discrediting some of Dr. Lange's opinions.

As to Dr. Rodgers' opinion, the ALJ stated that the opinion was given "prior to the claimant's most recent back surgery and is not a reflection of his current level of functioning, but rather an opinion given during a period of exacerbation of the claimant's pain." (Tr. 67.) The ALJ further stated that:

> The longitudinal medical record fails to support that the claimant has this degree of limitation. Dr. Rodgers most recent treatment note in fact indicates that the claimant reported only mild lower back pain and that the claimant was 'much better than preop', which suggests that his opinion regarding the claimant's functioning had changed since the claimant underwent surgery. Therefore, this opinion is given little weight here.

*Id.*

Hemby contends that the ALJ's decision to discredit Dr. Rodgers' opinion was based on the ALJ's mistaken belief that the September 18, 2013 opinion was rendered prior to Hemby's last

surgery, which occurred on July 8, 2013. Defendant suggests that the ALJ's confusion may have been caused by Hemby's testimony at the hearing that his last surgery was in November 2013. (Tr. 92.) Defendant further argues that Dr. Rodgers' opinion was inconsistent with the record, which revealed Hemby improved following his last surgery.

Although the ALJ's statement that Dr. Rodgers' opinion was rendered prior to Hemby's last surgery is factually incorrect, this error is not reversible as the ALJ provided other reasons to discredit Dr. Rodgers' opinion. The ALJ found that the record, including Dr. Rodgers' own treatment notes, did not support the degree of limitation found by Dr. Rodgers. For example, at Hemby's first post-operative visit on July 23, 2013, he reported to a physician assistant at Dr. Rodgers' office that he felt "100% better than before surgery," and he was walking one mile a day. (Tr. 638.) On August 20, 2013, Rodgers reported that he was "much better" since his surgery, was walking daily, and he had operated a riding lawn mower over the weekend. (Tr. 642.) Upon examination, Dr. Rodgers noted only that Rodgers' wounds were "well healed." *Id.* On September 25, 2013, Hemby reported to Dr. Rodgers' office that he had been riding on his tractor, and walking for two miles in the mornings. (Tr. 663.) On October 15, 2013, Hemby reported right lower extremity weakness, but indicated his low back was doing well, and he had "no complaints." (Tr. 665.) Upon examination, Dr. Rodgers' noted "minimal" lower back pain, and tenderness at the trochanteric bursa. *Id.* Hemby saw pain management physician Sean P. Stoneking, M.D., on November 15, 2013, with complaints of low back pain radiating into his right leg that he rated as a four on a scale of one to ten. (Tr. 652.) Upon examination, Hemby's gait was normal, he had moderately reduced range of motion and tenderness of the lumbar spine, negative straight leg raising, full strength of the lower extremities, and normal sensation of the lower extremities. (Tr. 655-56.) At Hemby's last visit with Dr. Rodgers in January 2014, he

reported "mild low back pain," and right lower extremity weakness.  (Tr. 669.)  Upon examination, Dr. Rodgers found that Hemby was neurologically stable, and his examination was unchanged.  *Id.*  Hemby's hardware was in good alignment.  *Id.*  This evidence supports the ALJ's findings that the medical evidence of record was inconsistent with the degree of limitation found by Dr. Rodgers, and that Hemby complained of only mild back pain following surgery.

The ALJ next found that the opinion of the state agency physician, Dr. Threlkeld, was consistent with the evidence, including the observations of Hemby's treating doctors and Hemby's own reports regarding his activity levels.  (Tr. 68.)  She noted that this opinion is supported with an explanation and a discussion of the relevant evidence.  The ALJ indicated that she was assigning "heavy weight" to Dr. Threlkeld's opinion, although she found Hemby is more limited in terms of his ability to climb ramps and stairs, and she added the option to change position based on Hemby's credible testimony at the hearing.  *Id.*

Hemby contends that the ALJ erred in relying on the opinion of a non-examining state agency physician.  Hemby notes that Dr. Threlkeld provided his opinion in November 2012, prior to two of his four surgeries.

The Court finds that the ALJ properly considered the opinion of Dr. Threlkeld.  As a state agency physician, Dr. Threlkeld is a highly qualified expert in Social Security disability evaluation.  20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).  Although Hemby asserts that Dr. Threlkeld's opinion is entitled to less weight because it was provided prior to two of Hemby's surgeries, "Plaintiff does not provide, and the Court is not aware of, any legal authority which holds a consultant's medical opinion must be based on subsequently created medical records, or that the consultant's opinion must necessarily be discounted because it is not based on those records."  *Barker v. Colvin*, No. 14–0900–CV–W–ODS–SSA, 2015 WL 4928556, at *1 (W.D.

Mo. Aug. 18, 2015). "Indeed, such a timeline is not uncommon in the context of review as claimants will update their medical records and other evidence of record throughout the course of the pendency of their claim and the medical or psychological consultant will necessarily review the file as it is at a certain point in time." *Ward v. Berryhill*, No. 1:15—CV—00225—NCC, 2017 WL 476403, at * 5 (E.D. Mo. Feb. 6, 2017).

Dr. Threlkeld provided a narrative explanation of his opinion, in which he discussed Hemby's first two surgeries and noted that Hemby's physical examinations had been unremarkable. (Tr. 148.) As previously discussed, Hemby's back pain improved even further after his last surgery. In addition, the ALJ did not rely solely on Dr. Threlkeld's opinion when determining Hemby's RFC. Thus, the ALJ did not err in evaluating this opinion.

## C. RFC

Residual functional capacity is defined as that which a person remains able to do despite his limitations. 20 C.F.R. § 404.1545(a), *Lauer v. Apfel,* 245 F.3d 700, 703 (8th Cir. 2001). The ALJ must assess a claimant's RFC based upon all relevant, credible evidence in the record, including medical records, the observations of treating physicians and others, and the claimant's own description of her symptoms and limitations. 20 C.F.R. § 404.1545(a); *Anderson v. Shalala,* 51 F.3d 777, 779 (8th Cir. 1995); *Goff v. Barnhart,* 421 F.3d 785, 793 (8th Cir. 2005). A claimant's RFC is a medical question, and there must be some medical evidence, along with other relevant, credible evidence in the record, to support the ALJ's RFC determination. *Id.; Hutsell v. Massanari,* 259 F.3d 707, 711–12 (8th Cir. 2001); *Lauer,* 245 F.3d at 703-04; *McKinney v. Apfel,* 228 F.3d 860, 863 (8th Cir. 2000). An ALJ's RFC assessment which is not properly informed and supported by some medical evidence in the record cannot stand. *Hutsell,* 259 F.3d at 712. However, although an ALJ must determine the claimant's RFC based upon all relevant evidence, the ALJ is not required to produce evidence and affirmatively prove that a claimant is able to

perform certain functions. *Pearsall,* 274 F.3d at 1217 (8th Cir. 2001); *McKinney,* 228 F.3d at 863. The claimant bears the burden of establishing her RFC. *Goff,* 421 F.3d at 790.

Moreover, "the ALJ is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians." *Martise,* 641 F.3d at 927.

In this case, the ALJ considered the objective medical evidence, which revealed Hemby has had back and hip problems with multiple surgical interventions since his alleged onset date. The ALJ therefore adopted many of Hemby's treating surgeons' findings in limiting him to lifting no more than ten pounds occasionally, and limiting him to standing or walking for no more than five minutes before resuming a seated position; and never climbing, kneeling, crouching or crawling. The ALJ rejected the opinions that were not supported by the record, such as the inability to bend at the waist, and a need to elevate his leg throughout the day. The ALJ provided sufficient reasons for rejecting these limitations, including the lack of objective findings on examination, an improvement after Hemby's last surgery, and Hemby's own statements regarding his significant daily activities. The RFC formulated by the ALJ is also consistent with the opinion of Dr. Threlkeld, and is slightly more restrictive than Dr. Threlkeld's findings. Thus, the ALJ's RFC determination is supported by substantial evidence in the record as a whole.

### D.     Step Five Determination

Hemby next argues that the ALJ erred in determining Hemby could perform jobs of document preparer, dowel inspector, and patcher. He contends that the vocational expert's testimony as to the requirements of those jobs was inconsistent with the ALJ's RFC determination.

At issue is the following testimony of the vocational expert, Denise Weaver:

I don't think any of those jobs cited require an extreme amount of contact with coworkers. There—there will be as an individual begins to work and as a probationary employee there will be a little bit more frequent contact with the supervisor to assure that the individual understands the job that they're doing but

eventually in the not—not real distant future because these jobs are unskilled jobs that I am quoting and they would not take much more than a 30-day period to learn. That supervisor will be backing away and allowing that individual to operate and do their-to their job with very little supervision so I would say eventually they would certainly all three meet—meet your hypothetical but to begin with there is going to be more supervisory in any job.

(Tr. 131.)

Hemby contends that, because Ms. Weaver testified that the jobs she cited would require more contact with supervisors during an initial training period, the positions are inconsistent with the RFC found by the ALJ.   Hemby notes that the ALJ found that he could have only occasional interaction with coworkers and supervisors, and his interaction with supervisors should be limited to ensuring that he is on task to complete tasks to industry standards.   (Tr. 61.)

Hemby's argument lacks merit.   Despite the testimony cited above regarding an initial training period requiring more interactions with supervisors, Ms. Weaver ultimately found that the hypothetical claimant could perform the positions of document preparer, dowel inspector, and patcher.   (Tr. 131.)   The Court notes that, under Hemby's theory, every time a claimant is limited in his interactions with supervisors, the ALJ would be required to determine that the claimant is entitled to benefits because the training for a job necessarily involves more frequent contact with supervisors.   A similar argument was rejected as "untenable" in *Wright v. Comm'r of Soc. Sec.*, No. 1:12CV1103, 2013 WL 3873947, at * 15 (N.D. Ohio Jul. 25, 2013).

The ALJ properly relied on the testimony of the vocational expert to find that Hemby could perform other work existing in significant numbers in the national economy with his RFC.   *See Robson v. Astrue*, 526 F.3d 389, 392 (8th Cir. 2008) (holding that a vocational expert's testimony is substantial evidence when it is based on an accurately phrased hypothetical capturing the concrete consequences of a claimant's limitations).   Thus, the ALJ's decision finding Hemby not disabled is supported by substantial evidence.

## Conclusion

For all of the foregoing reasons, Hemby's allegations that the ALJ erred are unavailing. Hemby was afforded a full and fair opportunity to present his claims, and the ALJ's ultimate decision did not fall outside the available "zone of choice." *Buckner*, 646 F.3d at 556. It must therefore be affirmed. Accordingly, Judgment will be entered separately in favor of Defendant in accordance with this Memorandum.


_____
ABBIE CRITES-LEONI
UNITED STATES MAGISTRATE JUDGE

Dated this 10th day of March, 2017.